ASHLEY v. SAMUEL C. TATUM CO.

(Circuit Court of Appeals, Second Circuit. March 13, 1911.)

No. 213.

1. PATENTS (§ 116*)—DESIGN PATENTS—SUFFICIENCY OF DESCRIPTION.

A patent for a design is not invalid because it does not contain a written description of the design, although its absence may have a bearing upon the construction of the patent, and therefore on the question of infringement.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 168½; Dec. Dig. § 116.*]

2. PATENTS (§ 328*)—DESIGNS—INFRINGEMENT—DESIGN FOR INKSTAND.

The Ashley design patent, No. 37,504, for a design for an inkstand, contains no written description, but covers "the ornamental design for an inkstand as shown," while the drawing shows a low square base, sur-

mounted by a low dome, of a diameter somewhat less than the side of the base; the entire surface being plain, and without any applied ornamentation. The absence of such ornamentation must therefore be considered an essential element of the design, and it is not infringed by the design of the Hilles patent, No. 40,125, which shows such surface ornamentation.

Appeal from the Circuit Court of the United States for the Southern District of New York.

Suit in equity by Frank M. Ashley against the Samuel C. Tatum Company. Decree for complainant (181 Fed. 840), and defendant appeals. Reversed.

The suit was brought for infringement of complainant's design patent No. 37,504, granted to him August 8, 1905, for design for an inkstand. Defendant's inkstand is made under patent to S. E. Hilles, assignor to defendant, granted July 6, 1909, No. 40,125, for design for an inkstand.

Wood & Wood (E. R. Wood, of counsel), for appellant.
F. M. Ashley and Albert T. Scharps, for appellee.

Before LACOMBE, WARD, and NOYES, Circuit Judges.

LACOMBE, Circuit Judge. Complainant's patent contains no written description of his invention. It merely states that the figure of the drawing is "a plan view of an inkstand, showing my new design," and claims "the ornamental design for an inkstand, as shown." This design is here given:

The defendant's patent contains a description, which need not be quoted from, and a view of the design, which is here shown:

Fig.1.

The two inkstands, when produced in glass, which seems to be the only material used for them, although neither patent refers to material, look much more alike than do the two drawings.

[1] The statute (Rev. St. § 4933 [U. S. Comp. St. 1901, p. 3399]) provides that "all the regulations and provisions which apply to obtaining or protecting patents for inventions or discoveries, not inconsistent with the provisions of this title shall apply to patents for designs." This reference includes section 4888 (page 3383), which provides that before any inventor shall receive a patent for his invention he shall "file in the Patent Office a written description of the same." This would seem to require that an application for a patent for a new design should include a "written description" of such design, and appellant contends that, since complainant's patent contains no such written description, it must be held void. If the proposition were a new one, the argument might be persuasive, especially in view of the unfortunate results that sometimes follow when the drawing is not accompanied by a written description. But in Dobson v. Dornan, 118 U. S. 10, 6 Sup. Ct. 946, 30 L. Ed. 63, precisely this point was raised, and the court held that the patent was not void because of its failure to contain a written description. This assignment of error is therefore without merit.

In the case at bar a written description is absent by reason of the action of the Patent Office. How that came about may be briefly stated. In the Dobson Case the design was one to be applied to carpeting, and it was represented by a photographic illustration. This illustration was, as the court states, "a six-inch square, containing a single figure or design." Construing the claim, the court held that it "covered the design as a whole, and not any part of it as a part; and it is to be tested as a whole—as to infringement." The samples of complainant's and defendant's carpets which were offered in the court below were not before the Supreme Court, which found in the evidence of two experts sufficient to sustain the finding of the Circuit Court. Apparently the alleged infringement was of such a character that the case presented no difficulty of the sort experienced in Tompkins v. New York Co., infra.

Subsequently to the decision in the Dobson Case, the Commissioner of Patents rendered a decision (Ex parte Mygatt, 117 O. G. 598) holding that written descriptions in design patents were "not only unnecessary, but also confusing and misleading," and refusing to allow the applicant to place in the record a written description of his design. The Court of Appeals of the District of Columbia also held that in such patents "a superadded verbal description is generally useless and ofttimes confusing." Ex parte Freeman, 109 O. G. 1339.

In conformity to these decisions the Patent Office in 1904, before Ashley's patent was granted, made a rule prohibiting applicants for design patents from insisting upon a written specification as a part of their patents. This went far beyond the Dobson Case. All that the Supreme Court had held was that, if the inventor did not supplement his drawing with a written description, he should not thereby lose his patent; his "design" as shown being "tested as a whole." But by the arbitrary action of the Patent Office the inventor was deprived of the opportunity of adding a written description, even in cases where it might be essential to the preservation of his rights, or

to the proper enlightenment of the public as to what the patent covered.

Subsequently the question came before the Court of Appeals for the District of Columbia in Ex parte Mygatt, 121 O. G. 1676, and the practice of the Patent Office was condemned. Since then the rule has been abrogated, but complainant's patent was issued during the period when it was in force. The necessity of having a written description, in some cases even of a flat ornamental design applied to a plain surface, became apparent in a case which came before this court in 1907. Tompkins Co. v. N. Y. Woven Wire Co., 159 Fed. 133, 86 C. C. A. 323.

[2] The absence of such a description in the case at bar has a necessary bearing upon the construction of the patent, and consequently upon the question of infringement. Referring to the drawing, we find that the effect upon the eye is produced by several elements. The form of the inkstand itself is prominent. There is a flat, broad base, surmounted by a low dome; the relative proportions of the parts presenting an artistic and pleasing effect. Moreover, the proportions, indicating, as they do, a low, broad, heavy base with a low height, suggest the adaptability of the structure to the purpose intended, as being calculated to insure it against accident and to keep it near the table. The inkstand, also, as indicated in the drawing, is devoid of any design applied to any part of its surface. In the language of the District Judge, "it makes no shallow appeal to the senses by any effort at inconsequent ornament." Finally it shows a dip tube colored black; the evidence indicating that prior dip tubes had always been of glass the same color as the rest of the structure.

The manufacture of glass inkstands of this general character has been going on for very many years, and the chance of any broadly new design being produced would seem to be slight. Nevertheless the exhibits in the case indicate that complainant's design shows a radical and distinctive change in type from those which preceded it; its dominant feature being the contour and relative proportions of parts, rather than the presence or absence of any applied ornamentation. It may be that upon the state of the art at the date of his application complainant would have been entitled to a claim calculated to secure to him the dominant feature of his device, with or without ornamentation, unless, indeed, the ornamentation was carried to such an extent as substantially to modify the effect produced by the contour and proportions. But there is no such claim, and no written description upon which it could be based. The circumstance that both are absent, possibly solely because the Patent Office refused to allow any written description to be filed, does not give this court the power to write such a description and claim into the patent. We must construe the claim according to the rule laid down in the Dobson Case as "covering the design as a whole, and not any part of it as a part; (testing it) as a whole—as to infringement."

We cannot, therefore, eliminate the element shown in the drawing, viz., the absence of any applied ornamentation. That element must

be held to be as essential as any other element. In defendant's inkstand, the general contour of base and dome in the same relative proportions is found; but around the lower half of the dome there is a series of circumferentially displayed facets which effect a substantial modification of appearance of the inkstand by suggesting the idea that it is made out of cut glass, instead of pressed glass. The difference between the two is readily apparent to any one—expert, or nonexpert—and there seems no likelihood that, whether looked at together or apart, the one could be mistaken for the other. In our opinion infringement of the claim has not been made out.

The decree is reversed, with costs, and cause remanded, with instruction to dismiss the bill, with costs.