### GEO. BORGFELDT & CO. et al. v. WEISS.

(Circuit Court of Appeals, Second Circuit. March 19, 1920.)

No. 113.

1. Patents ⬳252—Infringement of design patent depends on impression produced on purchasers.
    The question of infringement of a design patent for a doll is a question as to the impression produced on would-be purchasers.

2. Patents ⬳328—Design for doll valid and infringed.
    The Pfeffer design patent, No. 51,559, for a doll, *held* valid and infringed.

3. Patents ⬳252—Test of infringement of design stated.
    Infringement of a design patent for a doll turns upon whether there is identity of appearance, whether the effect produced upon the eye is the same, and whether there is substantial identity of design; and the persons to be deceived are not experts, but ordinary observers, giving such attention to the matter as purchasers usually give.

⬳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**4. Patents ☞180—Design patent entitled to equivalents respecting nonessential details.**

A design patent for a doll entitles the holder to the usual range of equivalents with respect to known prior unessential details, and, though the patent drawings show a doll with a cap, the figure shown is included within the claim of the patent, whether the doll is provided with painted hair, real hair, bathing cap, or military or naval cap, or any other standard form of headdress.

Appeal from the District Court of the United States for the Southern District of New York.

Suit by George Borgfeldt & Co. and another against Leo L. Weiss. From a decree dismissing the bill, complainants appeal. Reversed, with directions.

Hans v. Briesen, of New York City (Fred A. Klein, of New York City, of counsel), for appellants.

Kornbluth & Pollack, of New York City (Herman C. Pollack, of New York City, of counsel), for appellee.

Before WARD, ROGERS, and HOUGH, Circuit Judges.

ROGERS, Circuit Judge. The suit is for the infringement of United States design patent No. 51,559, issued to Miss Genevieve Pfeffer, of San Jose, Cal., on December 11, 1917. The patentee states in her specification that she has invented a new, original, and ornamental design for dolls, of which "the following is a specification, reference being had to the accompanying drawing." There is no written description of the invention, and the claim is "the ornamental design for a doll as shown." Those drawings are reproduced herein:

Fig. 1.

The complainant gets its title from a contract with Miss Pfeffer, giving it the manufacturing rights, and reserving to herself a royalty.

The defendant has taken out no patent, but reproductions of the alleged infringing doll are here shown:

The plaintiff calls his doll "Splashme" and defendant names his "Duckme." The plaintiff's figurettes have met with remarkable success in the market; some 360,000 having been sold between April, 1918, when they were put on the market, and June, 1919, when the case was tried. The amount of the sales is said to be somewhere between $500,000 and $1,000,000.

[1] The dolls of the plaintiff and those of defendant differ from each other in certain details which are unessential. The defendant's doll is provided with painted hair, or imitation hair, where the doll of the patent shows hair covered by a cap. The defendant's doll omits the cap. The posture of the arms and legs has been slightly varied in the doll of the defendant, and the defendant's doll has painted slippers, where the plaintiff's doll has bare toes. The conclusion, however, is irresistible that defendant has copied plaintiff's design as a whole and sought to escape infringement by varying the ornamentation. In the opinion below the District Judge, speaking of the two dolls, says:

"At a glance one would, of course, see the patent plagiarism."

He also says that—

"The only variation which the defendant has made, and which is at all observable, is to take off the bathing cap from the figure in the design. That would not be enough under ordinary circumstances, because a close-fitting cap is only distinguishable by some attention from an uncovered head."

He adds that when the cap is off—and it is removable from plaintiff's doll—the two figures are distinguishable beyond question. That is true, but in the stores, when the dolls are sold, they have their caps on; and the question is as to the impression produced on would-be purchasers.

In Ashley v. Tatum, 186 Fed. 339, 108 C. C. A. 539, this court held that a patent for a design is not invalid because it does not contain a written description of the design, although its absence may have a bearing upon the construction of the patent, and therefore on the question of infringement. The Supreme Court in Dobson v. Dornan, 118 U. S. 10, 6 Sup. Ct. 946, 30 L. Ed. 63, had already held that the specification for a design, which is accompanied by a photographic illustration and merely states that the nature of the design is fully represented in the illustration and claims the configuration of the design annexed, is a sufficient description and claim.

[2] This court is of the opinion that plaintiff's patent is valid. The plaintiff's design is clever and attractive; the controlling features being the eyes and the posture of a doll in bathing costume. It is not invalidated by anything in the prior art. The exhibits produced by defendant at the trial only served to emphasize the uniqueness and individuality of the plaintiff's design.

[3] The plaintiff's patent being valid, there remains the question whether the defendant infringes. The question of infringement turns upon whether there is identity of appearance; whether the effect produced upon the eye is the same; whether there is substantial identity of design; and the persons to be deceived are not the experts, but the ordinary observers. giving such attention to the matter as purchasers usually give. That is the test laid down in Gorham Co. v. White, 14 Wall. 511, 20 L. Ed. 731, a case which has never been overruled.

The court below has decided that there is no infringement, and in doing so appears to have misapprehended the decision of this court in Ashley v. Tatum. That case was decided in the lower court in 1910, and the opinion of the District Judge is found in 181 Fed. 840. The patent in that case was a design patent for an inkwell. The District Judge held the patent valid and infringed, declaring that the prior art presented nothing which in the least suggested it. The complainant's design contained no ornamentation. The defendant's design did contain ornamentation, and the court declared it was "no doubt distinguishable" from complainant's design, but he also found that it contained "every element of complainant's design." He said:

"The defendant has taken over bodily every element of the complainant's design, and he has added just enough, and that, too, injuriously, to make a colorable claim to differentiation. * * * The complainant's design appears to me to have been imitated. and I therefore find that the defendant's wells are an infringement."

The case was brought to this court upon appeal, and the decision is found in 186 Fed. 339, 108 C. C. A. 539; the opinion being written by Judge Lacombe. This court reversed the court below, and held there was no infringement, although agreeing with the District Judge

that the two inkwells were plainly distinguishable. "The difference between the two is readily apparent to any one, expert or nonexpert, * * *" said Judge Lacombe, "and there seems no likelihood that, whether looked at together or apart, the one could be mistaken for the other."

In Ashley v. Tatum there was no specification of any kind, and the patent consisted entirely of an illustration, and the article said to infringe was plainly distinguishable from the article which was said to be infringed. What was said in that case must be strictly confined to the class of cases to which it belongs. The case is plainly distinguishable from the case now before the court, as will presently appear. After this court decided Ashley v. Tatum, an attempt was made to get it before the Supreme Court by writ of certiorari; it being alleged that the Patent Office would allow no verbal description in design patents, and that over 30,000 of such patents were imperiled so far as their scope was concerned. The application, however, was denied. 225 U. S. 707, 32 Sup. Ct. 839, 56 L. Ed. 1266.

In 1912 in Graff, Washbourne & Dunn v. Webster, 195 Fed. 522, 115 C. C. A. 432, this court had before it a design patent for a dish. The question under consideration in the Tatum Case was not discussed, and the case itself was not referred to. But Judge Coxe, speaking for the court, said:

"Having seen the complainant's design in a show case or shop window, the ordinary buyer would be very likely to mistake the defendants' design for it, if seen in similar environment. This is the real test of infringement of design patents. If the ordinary buyer, having seen one of the complainant's dishes and wishing to procure one like it, would be induced to buy one of the defendants' dishes instead, it is enough. That he would be so deceived is plain, not only from the testimony that persons were actually deceived, but also from an examination of the dishes themselves. Their general appearance is so similar that a minute and careful inspection is required to distinguish the differences."

In 1914, in Mygatt v. Schaffer, 218 Fed. 827, 134 C. C. A. 515, this court had before it a design patent for a prismatic glass reflector. In this case the Tatum Case was not referred to. We held it not necessary that the alleged infringing article should be an exact copy of that of the patent to sustain a charge of infringement of design patent. There was nothing said in the opinion which has any bearing upon the question now under consideration.

In 1915, in Ashley v. Weeks-Numan Co., 220 Fed. 899, 136 C. C. A. 465, this court again had before it a design patent for an inkstand. But in this case there was a written specification, and we held that the patentee was not limited to the precise article shown in the drawing, but was entitled to the protection of the court against the making and marketing of inkstands which contained the dominant features of the design described in the specification.

[4] The court agrees with the statement of plaintiff's counsel that, so far as the claim of the design patent is concerned, the plaintiff is entitled to the usual range of equivalents with respect to known prior unessential details, so that the figure shown is clearly included within the claim of the patent, whether the doll is provided with painted hair,

real hair, bathing cap, military or naval cap, or any other standard form of head dress, since all of these were well-known equivalents in the actual art to which this patent relates.

The decision in Ashley v. Tatum did not enunciate a rule of law applicable to all design patents, but a rule applicable to the type of case then before the court, in which, on the face of the exhibits, the article of the design patent and the article alleged to be infringed were so clearly distinguishable that no likelihood existed of one being mistaken for the other. That case differs from this, in that in this case the article of the design patent and the article alleged to be infringed so closely resemble each other that there is a likelihood of the one being mistaken for the other by the ordinary observer. Where this is the case, infringement is made out, and the rule laid down in Ashley v. Tatum does not apply.

The decree is reversed, with costs, and the court is directed to reinstate the bill and to grant the relief prayed.