**NEBEL KNITTING CO., Inc.**

v.

**SANSON HOSIERY MILLS, Inc. et al.**

**No. 6811.**

United States Court of Appeals,
Fourth Circuit.

Argued June 11, 1954.

Decided July 13, 1954.

Whiteford S. Blakeney and Paul B. Bell, Charlotte, N. C. (W. H. Abernathy, Paul B. Eaton, Eaton & Bell and Pierce & Blakeney, Charlotte, N. C., on the brief), for appellant.

Henry N. Paul, Jr., Philadelphia, Pa. (Armistead W. Sapp, Greensboro, N. C., Robert B. Frailey and Paul & Paul, Philadelphia, Pa., on the brief), for appellees.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

This case relates to the infringement of United States Patents Nos. D. 151,732 and D. 151,733 to W. G. Bley for ornamental designs on women's hosiery which

we described and held to be valid and infringed in Glen Raven Knitting Mills v. Sanson Hosiery Mills, 4 Cir., 189 F.2d 845.[1]

The patents cover an ornamental design to be incorporated in the fabric for the improvement of its appearance by framing the thickened reenforcement of the heel, sole and toe so as to relieve the contrast in the border line between this portion and the body of the stocking, as shown by the figures displayed in the opinion. Therein we referred to the rule that the invention of a design patent resides in the peculiar or distinctive appearance of the article to which it is applied or to which it gives form, and if the design is new and original, produces a pleasing impression on the aesthetic sense and involves a step beyond the prior art, not obvious to persons skilled therein, the designer is entitled to the monopoly of a patent. We were impressed by the finding of the trial court that numerous attempts prior to the patents in suit had been made without substantial success of a permanent character to improve the appearance of the heel and sole of a woman's stocking, but that Bley's designs had met with such immediate acceptance that the sales of the owners of the patent and their licenses had increased by leaps and bounds; and hence we reached the conclusion that the inventor had met the limited requirements of a patent in this field.

In the pending case the validity of the patents having been established, the charge of infringement is the only controversial issue, and that is a question of fact. The leading case of Gorham Mfg. Co. v. White, 14 Wall. 511, 20 L.Ed. 731, defines the test by which infringement of a design patent should be determined in these words:

"* * * We do not say that in determining whether two designs are substantially the same, differences in the lines, the configuration, or the modes by which the aspects they exhibit are not to be considered; but we think the controlling consideration is the resultant effect." 14 Wall. at page 526, 20 L.Ed. 731.

"* * * Plainly, it must be sameness of appearance, and mere difference of lines in the drawing or sketch, a greater or smaller number of lines, or slight variances in configuration, if sufficient to change the effect upon the eye, will not destroy the substantial identity." 14 Wall. at pages 526–527.

"If then, identity of appearance or * * * sameness of effect upon the eye, is the main test of substantial identity of design, the only remaining question upon this part of the case is, whether it is essential that the appearance should be the same to the eye of an expert. The court below was of opinion that the test of a patent for a design is not the eye of an ordinary observer. The learned judge thought there could be no infringement unless there was 'substantial identity' 'in view of the observation of a person versed in designs in the particular trade in question—of a person engaged in the manufacture or sale of articles containing such designs—of a person accustomed to compare such designs one with another, and who sees and examines the articles containing them side by side.' There must, he thought, be a comparison of the features which make up the two designs. With this we cannot concur. Such a test would destroy all the protection which the act of Congress intended to give. There never could be piracy of a patented design, for human ingenuity has never yet produced a design, in all its details, exactly like another, so like, that an expert could not distinguish them." 14 Wall. at page 527.

"* * * Experts, therefore, are not the persons to be deceived. Much less than that which would be substantial identity in their eyes

1. A like result was reached in Sanson Hosiery Mills v. Warren Knitting Mills, 3 Cir., 202 F.2d 395.

would be undistinguishable in the eyes of men generally, of observers of ordinary acuteness, bringing to the examination of the article upon which the design has been placed that degree of observation which men of ordinary intelligence give. It is persons of the latter class who are the principal purchasers of the articles to which designs have given novel appearances, and if they are misled, and induced to purchase what is not the article they supposed it to be, * * * the patentees are injured, and that advantage of a market which the patent was granted to secure is destroyed." 14 Wall. at page 528.

■ "We hold, therefore, that if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other." 14 Wall. at page 528.

Applying this rule to the issue before us, we find that the two Bley patents in suit disclose variant forms of the "picture frame heel" which Bley designed for women's hosiery. Patent No. '733 shows the heel, sole and toe reenforcement area with the framelike ornamental line extending across the top of the heel, and thence downwardly along each side of the area to a point adjacent to the ankle line. Patent '732 shows a further extension of the same type of framelike ornamentation enclosing the whole reenforcement area. It is obvious that the two patents embody a single conception since they differ only as to the length of the framelike ornamental line; and for practical purposes this difference is greatly minimized when the extended line of Patent '732 is concealed by the shoe of the wearer.

The designs of these patents are illustrated by drawings in the patent which are reproduced below.

Figure 1 of Patent '732

Figure 1 of Patent '733

The accused stocking of the Nebel Knitting Co., Inc., the defendant-appellant in this case, is also set out below for purposes of comparison.

reenforced area of the defendant's stocking tapers and rises higher in the back and is narrower throughout, and particularly that the contour of the framing

■ The similarity between the figures of the defendant and of the plaintiff is so obvious that little comment need be added. We agree with the conclusion of the District Judge that the appearance of one is so similar to that of the others that an ordinary purchaser could easily be confused; and hence infringement is made out. The defendant's design resembles more closely the design of Patent '733.

We are not dissuaded from this conclusion by the existence of minor differences between the patented and accused article to which the defendant calls attention, namely, that when the two articles are laid side by side it is seen that the

line in the defendant's stocking is smooth and straight while that of the plaintiff's is sawtooth or stepped.

These differences must not be overlooked, but as pointed out in Gorham Co. v. White, supra, the controlling consideration in determining whether two designs are substantially the same is the resultant effect of the whole. That it is the same in the pending case is manifest from a comparison of the reproductions set out above. In like manner infringement was established in the Gorham Company's case although differences in line and configuration were easily discernible when the competing designs were laid side by side.

The defendant, however, contends in effect that substantial sameness of the designs is not established in any case unless the similarity is so great as to cause confusion in the mind of the ordinary purchaser and lead him to buy one article in the belief that he is buying the other.[2] With this idea in mind the defendant offered the testimony of a number of witnesses engaged in the business of buying and selling stockings who said, when shown stockings bearing the patented design and stockings bearing the design used by the defendant, that they could readily distinguish the difference between them and that a customer purchasing stockings for personal use would not be confused by the similarity and purchase one in the belief that she was purchasing another. Hence it is said that infringement is not made out.

 This testimony is not convincing because the witnesses who gave it were experts in the stocking field while the ordinary retail purchaser, whose reaction is the important test, was not called upon to speak. We think, moreover, that even if discriminating purchasers, having become familiar by experience with the products of the parties to this case, should be able to recognize the differences in design and avoid confusion, infringement would not thereby be avoided in this case. Undoubtedly, similarity so great as to create confusion in the minds of customers constitutes conclusive evidence of infringement; but it may not be said that infringement never exists in the absence of such confusion. In the pending case the defendant appropriated the heart of the invention by using the picture frame device in connection with what is known as the French heel. Prior to the appearance of the Bley design

most stockings worn by women embodied a heel and sole reenforcement of a rectangular or triangular configuration tapering upwardly to a narrow top. The Bley invention made this area attractive so that what was theretofore largely functional and somewhat unsightly, was transformed into an ornamental feature which appealed to the purchasing public. The patents in suit, although limited in scope, are entitled to some range of equivalents, and in our judgment the defendant's design is within that range. See Geo. Borgfeldt & Co. v. Weiss, 2 Cir., 265 F. 268.

Affirmed.

---

2. It is uniformly held that infringement is established when the competing designs are so similar as to confuse the ordinary purchaser. See Gorham Co. v. White, 14 Wall. 511, 20 L.Ed. 731; American Fabrics Co. v. Richmond Lace Works, 2 Cir., 24 F.2d 365; Whiting Mfg. Co. v. Alvin Silver Co., 2 Cir., 283 F. 75; Ashley v. Samuel C. Tatum Co., C.C.S.D.

N.Y., 181 F. 840; Id., 2 Cir., 186 F. 339; Ashley v. Weeks-Numan Co., 2 Cir., 220 F. 899; Geo. Borgfeldt & Co. v. Weiss, 2 Cir., 265 F. 268; Mygatt v. Schaffer, 2 Cir., 218 F. 827; Harris & Schafer v. Curtiss Aerocar Co., 5 Cir., 69 F.2d 264; Sharnay Hosiery Mills, Inc. v. Sanson Hosiery Mills, Inc., D.C.E.D.Pa., 109 F. Supp. 956.