# IN RE SCHRAUBSTADTER.*

PATENTS; DESIGNS; RULES OF PATENT OFFICE; RULE IN CASES OF DOUBT
AS TO PATENTABILITY; SLIGHT PECULIARITIES IN DESIGN; IDENTITY OF
DESIGN; DESIGN ACT CONSTRUED.

1. In an application for a design patent for a font of type it is sufficient
to furnish the conventional drawing accepted for years by the Patent
Office, and it is not necessary, under the Patent Office rules relating
to designs, to show or describe the type themselves.
2. If there is a serious doubt as to patentability, that doubt should be
resolved in favor of the applicant, for, if his claim be denied, he has
nothing with which he can go into court and attempt to enforce a law-
ful monopoly; but, in reversing the concurrent decisions of the Patent
Office, there should be conviction beyond a reasonable doubt that, in
the absence of anything outside of the record, the patent granted on
the application would be held to be a valid one.
3. Where the peculiarities of an applicant's design do not rise to the
dignity of invention the design is not patentable, although the
peculiarities are such as to prevent the design from being regarded in
the trade as a substitute for a design already patented.
4. The novelty of a design is to be determined by the comparative appear-
ance of the designs to the eyes of average observers, and not to the
eyes of experts.
5. In order to decide that a design is unpatentable, it is not necessary to
find that it infringes an earlier one, for, to entitle an applicant to the
benefit of the design act, there must be an exercise of the inventive
faculty.
6. In a font of type, the addition of an old waved outline to common
forms of letters does not amount to invention.
7. The patentability of a design does not depend on its esthetic value.

---

*Patentability of design.—As to patentability of design, see authorities
presented in editorial notes to Smith v. Whitman Saddle Co. 37 L. ed. U.
S. 606, and Wollensak v. Sargent, 38 L. ed. U. S. 138.

The design act, as construed by the courts, intends that the patent-ability of a design shall be determined by its appeal to the eyes of the ordinary man, and not to the eyes of a jury of artists.

No. 314. Patent Appeals. Submitted November 20, 1905. Decided December 5, 1905.

HEARING on an appeal from a decision of the Commissioner of Patents refusing to allow an application for a design patent.
*Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. James A. Carr, Mr. Fred F. Reisner,* and *Mr. H. H. Simms* for the appellant.

*Mr. John M. Coit* for the Commissioner of Patents.

Mr. Justice DUELL delivered the opinion of the Court:

The Commissioner of Patents refused to grant the appellant, William A. Schraubstadter, a design patent for his alleged improvements for a font of type, and from such decision this appeal was taken. The record discloses that his claim was fully considered by the various tribunals of the Patent Office, and that his counsel most carefully and ably presented the arguments in favor of the patentable novelty of the design. Not only were the usual hearings had, but it appears that a rehearing was asked and granted. It appears that in the decision of the Commissioner on the rehearing certain alleged prior patents, not before referred to, were cited by the Commissioner, some of which do not belong to the prior art. These we have disregarded in the consideration of the appeal.

Some criticism is made in appellee's brief that appellant has not shown or described the type themselves, but has only shown the kind of printed matter produced by the type. The answer to this is that appellant has furnished the conventional drawing accepted for years by the Patent Office, save that he has shown

modifications of lower-case letters "f" and "t." This the Examiners-in-Chief held he had the right to do, and the correctness of the ruling was not questioned by the Commissioner. Furthermore, the absence of any description of the design is authorized by the Patent Office rules relating to designs.

As we view it, the real question before us is whether the claimed design, in view of the prior art, discloses patentable invention. In all cases where that question is presented to this court, or to the Federal courts in infringement suits, it is unwise to generalize, for the facts in each case must govern the conclusion reached, and often it is difficult to differentiate between patentable and nonpatentable invention. Where there is a serious doubt left in the mind of this court, we believe that that doubt should be resolved in favor of the one seeking a patent, for, if his claim be denied, he has nothing with which he can go into court and attempt to enforce a lawful monopoly. We should, however, in reversing the concurrent decisions of the Patent Office, be convinced beyond a reasonable doubt that, in the absence of anything but what is shown by the record in the case before us, we would hold a patent granted on the application to be a valid one.

In the case at bar there is not left, after a careful examination of the record and of the briefs of counsel, any serious doubt as to the nonpatentability of the alleged design in view of the disclosure of the prior art. To arrive at this conclusion it is unnecessary, in our opinion, to consider any of the prior patents save the design patents for fonts of type granted to Ihlenburg, November 12, 1895, No. 24,896, and to MacDonall, July 11, 1899, No. 31,215. We may and do freely admit the assertion of appellant's counsel that there are differences between the designs, but these differences, to the average observer, are small. To an expert they are undoubtedly greater, and it is probably true, as set forth in the affidavit of Mr. Nelson, that the type sought to be protected by the appellant have individual peculiarities which would prevent them from being regarded by the printing trade as a substitute for the type of the patented designs. But such slight differences and peculiarities do not rise to the dignity

of invention, and do not warrant a grant of a patent to this ap-
pellant. Viewing the relations between these designs,—the pat-
ented and the unpatented,—we would do violence to the law
as laid down by the Supreme Court were we to reverse the Com-
missioner of Patents. In *Gorham Mfg. Co.* v. *White,* 14 Wall.
511, 20 L. ed. 731, the true test of identity of designs was laid
down, and has been followed by that court to the present time.
Said the court: "Plainly, it must be sameness of appearance,
and mere difference of lines in the drawing or sketch, a greater
or smaller number of lines, or slight variances in configuration, if
insufficient to change the effect upon the eye, will not destroy
the substantial identity.   *   *   *   So a pattern for a carpet,
or a print, may be made up of wreaths of flowers arranged in a
particular manner. Another carpet may have similar wreaths,
arranged in a like manner, so that none but very acute observers
could detect a difference. Yet in the wreaths upon one there
may be fewer flowers, and the wreaths may be placed at wider
distances from each other. Surely in such a case the designs
are alike."

The conclusion of the court was that the novelty of a design
was to be determined, and infringement decided, by the compara-
tive appearance of the designs in the eyes of average observers,
and was not to be determined by such appearance to the eyes
of experts. The court said: "We hold, therefore, that if in the
eye of an ordinary observer, giving such attention as a purchaser
usually gives, two designs are substantially the same, if the re-
semblance is such as to deceive such an observer, inducing him to
purchase one supposing it to be the other, the first one patented
is infringed by the other."

But, in determining the question of the patentability of the
later design, it is not necessary to find that it infringes the
earlier one in order to come to the conclusion that the later one
lacks patentability, for invention is required in the production
of a patentable design. *Smith* v. *Whitman Saddle Co.* 148
U. S. 674, 37 L. ed. 606, 13 Sup. Ct. Rep. 768. In *Northrup*
v. *Adams,* 12 Off. Gaz. 430, Mr. Justice Brown, then District
Judge for the Eastern District of Michigan, in stating that the

law applicable to design patents does not materially differ from the law relating to mechanical patents, said: "To entitle a party to the benefit of the act, in either case, there must be originality, and the exercise of the inventive faculty."

Where, in cases like the one now before us, we arrive at the same conclusion as have the various tribunals of the Patent Office, it serves no good purpose to elaborate the same reasons and restate the same facts. It is sufficient to set forth that we agree with them in their conclusion that the alleged invention is not deemed worthy of protection by patent. This is doubly so when we arrive at the same conclusion for reasons substantially the same as those advanced by them. Suffice it to say that we agree with the Commissioner that, "aside from the waved outline, the applicant's letters seem to be of a very ordinary style." To add this old waved outline to common forms of letters does not, we believe, amount to invention. Given the prior Ihlenburg and MacDonall patented designs it did not require the exercise of the inventive faculty to produce appellant's design.

On the consideration of this appeal we have not lost sight of appellant's contention that it is impracticable for the Patent Office tribunals to pass judgment on esthetic values. We need not take issue with him upon the statement that "the proper esthetic estimation of a new type design, therefore, requires *taste*, the sense of the beautiful not in its merely natural state but highly cultivated and developed in delicacy and correctness under the guidance of reason." The answer to this is that Congress, in enacting the patent statutes, relating as well to designs as to mechanisms, was not establishing a school of fine arts, and did not provide for juries of artists, or artistic experts, to pass upon the questions of originality and invention. It was a condition, and not a theory, that confronted Congress; and the courts, in construing design patents, both in reference to invention and infringement, have not adopted the high standard which appellant insists to be the proper one in determining whether the design produces a new and pleasing impression on the esthetic sense. The eye to which the design is to appeal is that of the ordinary man, and not the eye of the artist. We may deplore the fact

that Congress has not seen fit to provide a system for the grant of design patents which leaves the question of patentability to juries of artists, and that the courts, in construing such patents and passing upon the questions of originality and infringement have not held that the appearance of the various designs was to be tested by the artistic eye, still we doubt the practicability of such a system. However this may be, we must, while the design act reads as it does, and is construed as it has been by the court of last resort, follow such construction, and when we do we find no sufficient reason shown to warrant a reversal of the decision of the Commissioner of Patents, and his decision therefore should be and is affirmed. The clerk of the court will certify this opinion and the proceedings of the court in this cause to the Commissioner of Patents according to law.          *Affirmed.*